```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

MICHAEL S. TROMBLEY,

        Plaintiff,      **No. 1:17-cv-00131-MAT**
  -vs-                      **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,

        Defendant.

## **INTRODUCTION**

Michael S. Trombley ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g), applicable to SSI cases through 42 U.S.C. § 1383(c)(3). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ## 10, 11.

## **PROCEDURAL STATUS**

Plaintiff filed applications for DIB and SSI on July 16, 2013, alleging disability beginning June 12, 2012. Administrative

1

Transcript ("T.") 155, 162. Plaintiff's applications were initially denied on August 19, 2013, and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). T. 62-82.

At Plaintiff's request, a video hearing was conducted on July 14, 2015 by the ALJ in Buffalo, New York, and Plaintiff appeared in Little River Valley, New York. A vocational expert ("VE") also testified. In a decision dated September 1, 2015, the ALJ found Plaintiff not disabled from June 12, 2012, through the date of the decision. T. 20. On December 19, 2016, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision thus became the final decision of the Commissioner subject to judicial review. T. 1-4. This action followed.

## SUMMARY OF THE RELEVANT MEDICAL EVIDENCE

Plaintiff was 58 years-old at the time of his hearing. Dkt. #10-1, p. 2. His medical record indicates that he treated regularly for various conditions, which included a seizure disorder (complex epilepsy) secondary to traumatic brain injury (subdural hematoma), coronary artery disease with placement of multiple stents, diabetes, history of dyslipidemia, and status post-right humerus hemiarthroplasty (shoulder replacement). Id. Plaintiff had a 30-year work history, including work as a brick-layer, prior to being laid off for medical reasons. Id.; T. 41, 695.

Particularly relevant to this decision, on December 12, 2014, Plaintiff was taken by ambulance to the emergency room complaining of chest pain, dyspnea on exertion, shortness of breath, and cough at baseline. T. 577, 590, 595. Two stents were placed. T. 780-81. Five days later Plaintiff was back in the emergency room with sudden chest pain. T. 605-06. Treatment notes indicated that he had had a heart attack. T. 753.

On February 3, 2015, cardiologist Dr. John Visco examined Plaintiff and opined that Plaintiff did not have signs of congestive failure except that his heart rate was low. T. 751-52. Dr. Visco scheduled an echocardiogram to assess left ventricular function and wanted to see him again in six months. T. 752. The echocardiogram revealed the left ventricle was in normal dimension with no evidence of hypertrophy and normal systolic function, however mild pulmonary hypertension and bi-atrial enlargement were noted. T. 749-50. Plaintiff returned to emergency at Kaleida Health on March 15, 2015, complaining of more chest pain. T. 718.

On June 9, 2015, Dr. Visco filled out an RFC questionnaire and noted Plaintiff suffered from coronary artery disease and had multiple stents, the most recent being February 2015. T. 500, 751-52. Plaintiff's symptoms included chest pain, shortness of breath, and dizziness, with angina pain occurring approximately three times per week. Id. According to Dr. Visco, Plaintiff was

capable of only low-stress jobs. T. 501. Dr. Visco opined that Plaintiff was not a malingerer and had marked limitation of physical activity as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity. T. 500. In response to several of the questions, Dr. Visco merely wrote to "see attachment," however no attachment is present to review. T. 500-02.

On June 18, 2015, Plaintiff's primary care physician Dr. Corinne Krist, who had treated Plaintiff every four months since early 2012, completed a residual functional capacity ("RFC") questionnaire. T. 494-98. Dr. Krist's diagnosis was a New York Heart Association functional classification of Class II (short of breath with ordinary activity), with a fair prognosis. T. 494. Her opinion was based on an echocardiogram, laboratory results, the fact that Plaintiff had undergone cardiac catheterization and been fitted with a Xience Alpine drug-eluting stent, an ultrasound scan, and the fact that Plaintiff had an infrarenal aneurysm of 3.7 cm. Id. Plaintiff's symptoms included chest pain, shortness of breath, fatigue, weakness, nausea, and dizziness. Id.

Dr. Krist opined that Plaintiff was not a malingerer and that he had marked limitation of physical activity as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity. Id. She wrote that

4

Plaintiff could perform low stress jobs, that he experienced depression due to his chronic health conditions, and that his cardiac symptoms rarely interfered with attention and concentration needed to perform simple work tasks. T. 495. Dr. Krist also found Plaintiff's impairments to be expected to last at least twelve months, that he could only walk one city block without rest or severe pain, that he could sit 4 hours and stand less than 2 hours in an 8-hour workday, and that he would need to take unscheduled breaks of 10 minutes to lie down roughly every 30 minutes. T. 496.

Dr. Krist opined that Plaintiff could rarely lift and carry less than 10 pounds and never lift and carry 10 pounds or more. Id. She stated that he could occasionally twist; rarely stoop, crouch, or climb stairs; and never climb ladders. T. 497. According to Dr. Krist, Plaintiff needed to avoid all exposure to extreme heat and cold and avoid even moderate exposure to multiple other irritants. Id. When asked to provide additional limitations, Dr. Krist noted limitations with regard to concentration and memory, as well as limitations due to right shoulder surgery and Plaintiff being right-handed. T. 498.

## **The ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation process promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

5

At step one, the ALJ found that that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that the monetary amounts received during that period were unemployment benefits. T. 10.

At step two, the ALJ found Plaintiff that suffers from one severe impairment: right humerus hemiarthroplasty. T. 10-11; see 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ did not find Plaintiff's diabetes mellitus, seizures, aortic aneurysm, encephalomalacia, headaches, or alcohol abuse to be "severe." T. 11; see 20 C.F.R. §§ 404.1522, 416.922.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ considered whether Plaintiff's conditions met or medically equaled Listing 1.02. T. 11.

Before proceeding to step four, the ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: Plaintiff is unable to work around unprotected heights or around dangerous, heavy, moving machinery; he is unable to climb ropes, ladders, or scaffolds; he has occasional limitations in the ability to reach in all directions with his upper right extremity; he has occasional limitations in the ability to push

6

or pull with the upper right extremity; and he is unable to work in areas where he would be exposed to cold temperatures. T. 11-12.

At step four, based on the record and the testimony of the VE, the ALJ found that Plaintiff was able to perform his past relevant work as a Host with a light exertional level. T. 19.

The ALJ therefore did not reach step five and accordingly found that Plaintiff was not disabled as defined in the Act. T. 20.

## SCOPE OF REVIEW

A federal district court may set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

## DISCUSSION

Plaintiff first argues that the RFC is not supported by substantial evidence because the ALJ gave "little" weight to all

of the medical opinions (i.e., the two June 18, 2015 questionnaires from Dr. Krist, and the June 9, 2015 questionnaire from Dr. Visco) and impermissibly elevated his own lay judgment over those of the treating physicians.[1] Relatedly, Plaintiff argues at Point III that the ALJ failed to properly apply the treating physician rule when evaluating Dr. Krist's opinion. For his second argument, Plaintiff contends that the ALJ erred in declining to find his coronary artery disease a "severe" impairment at step two, and instead only found his status post-right humerus hemiarthroplasty to be "severe."

**I. Erroneous Weighing of the Medical Opinions and Failure to Apply the Treating Physician Rule (Plaintiff's Points I and III)**

"[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.'" Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)). "It is well settled that a treating physician's opinion is entitled to controlling weight, if it is

---

[1] Contrary to the administrative transcript's table of contents, Dr. Krist's opinion is at Exhibit 10F and Dr. Visco's is at 11F. See T. 493-502.

8

well-supported by medical findings and not inconsistent with other substantial evidence." Sublette v. Astrue, 856 F. Supp.2d 614, 618 (W.D.N.Y. 2012) (citing Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999)).

As Plaintiff notes, the ALJ assigned "little" weight to all of the medical opinions of record: the opinion from Dr. Visco dated June 9, 2015, and the two opinions from Dr. Krist dated June 18, 2015. See T. 16-19. In addition, the ALJ did not have Plaintiff undergo a consultative physical examination. Plaintiff argues that since the ALJ discounted all of the medical opinions from Plaintiff's treatment providers, and did not have a consultative examiner's opinion, the ALJ arrived at the RFC assessment by improperly and arbitrarily substituting his own layperson's judgment for that of a medical expert. The Commissioner argues that a medical opinion is not necessarily required where the record contains sufficient evidence from which the ALJ can assess the RFC. Dkt. #11-1 at 14 (citing Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5 (2d Cir. 2017) (summary order)).

In Monroe, the Second Circuit concluded that the RFC assessment was supported by substantial evidence, despite the ALJ's rejection of a treating physician's opinion, because the ALJ "reached her RFC determination based on [the treating physician's] contemporaneous treatment notes[.]" 676 F. App'x at

9

8-9. Those notes, the Circuit explained, provided evidence "relevant to [the claimant's] ability to perform substantial gainful activity" as well as "relevant to her functional capacity." Id. However, "Monroe is distinguishable from this case because the ALJ here did not discuss treatment notes with any vocational or functional relevance when he formulated the RFC." Morales v. Colvin, No. 3:16-CV-0003(WIG), 2017 WL 462626, at *3 (D. Conn. Feb. 3, 2017); accord Muhammad v. Colvin, No. 6:16-CV-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017).

Furthermore, the RFC questionnaire from Dr. Visco appears to be incomplete, as Dr. Visco indicated "see attached" but there is no attachment in the record. The ALJ's weighing of Dr. Visco's opinion cannot be based on substantial evidence if the ALJ did not have the complete opinion before him. The absence of the attachment referenced in Dr. Visco's report raised a question as to the completeness of the record. "Where[, as here,] there are gaps in the administrative record . . . courts remand cases to the Commissioner for further development of the evidence." Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).

With regard to Dr. Krist's opinions, the Court agrees with Plaintiff that the ALJ failed to properly weigh the required factors as provided in the Commissioner's regulations, in pertinent part as follows:

10

> Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). . . .

20 C.F.R. §§ 404.1527, 416.927. The Court finds that Dr. Krist, who had seen Plaintiff every 4 months since early 2012, clearly met the regulatory factors to be considered a treating physician.

The ALJ must "comprehensively set forth [the] reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004); see 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Remand is appropriate where the ALJ fails to provide "'good reasons' for not crediting the opinion of a claimant's treating physician." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

By contrast, the ALJ conclusorily stated that Dr. Krist's opinions were "contradictory with treatment notes and examination

findings that [did] not support a residual functional capacity of sedentary." T. 17-18.

Because it is not clear from the ALJ's decision whether and to what extent he considered the applicable factors in reviewing Dr. Krist's opinions, it appears that the ALJ "failed to properly apply the 'substance' of the treating physician rule." Boyd v. Colvin, No. 6:15-CV-06667(MAT), 2016 WL 7155241, at *4 (W.D.N.Y. Dec. 8, 2016). In the instant case, the ALJ's failure to discuss the factors cannot be considered harmless error. Id. (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)).

## II. Step Two Error (Plaintiff's Point II)

At the second step of the sequential analysis, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits the plaintiff's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The step-two severity standard "is *de minimis* and is intended only to screen out the very weakest cases." Wells v. Colvin, 87 F. Supp.3d 421, 436 (W.D.N.Y. 2015) (citing McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014)). An impairment is "not severe" if the medical evidence establishes only a slight abnormality or combination of slight abnormalities which do not significantly limit the claimant's ability to perform basic work-related activities. See SSR 85-28, 1985 WL 56856, *3-4 (S.S.A.

12

Jan. 1, 1985) (clarifying policy on findings of "not severe" impairments).

Plaintiff argues that the ALJ erred in finding that his coronary artery disease was not severe. In particular, Plaintiff notes that Dr. Krist issued two opinions finding that this condition was not only severe, but significantly impaired his abilities to perform necessary work-related activities. See T. 495-97. In addition, Dr. Krist's clinical findings provided ample evidence that this impairment was "severe" under applicable standard. Those findings included a diagnosis with a New York Heart Association functional classification of Class II (short of breath with ordinary activity; fair prognosis) based on the findings from a February 16, 2015 echocardiogram; December 12, 2014 laboratory results; December 12, 2014 cardiac catheterization and Xience Alpine drug-eluting stent; ultrasound scan; and infrarenal aneurysm of 3.7 centimeters (June 6, 2014). T. 494. Dr. Krist stated that Plaintiff's symptoms included chest pain, shortness of breath, fatigue, weakness, nausea, and dizziness, and she opined that Plaintiff had a marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or angina discomfort on ordinary physical activity. T. 494. In light of the record as a whole, and in particular Dr. Krist's opinions summarizing Plaintiff's cardiac-related

treatment, the ALJ erred in not including coronary artery disease as a severe impairment at step two.

"An error at step two may be harmless if the ALJ identifies other severe impairments at step two, proceeds through the remainder of the sequential evaluation process and specifically considers the 'nonsevere' impairment during subsequent steps of the process." Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933, at *20 (W.D.N.Y. Mar. 6, 2015) (citing See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order)). Here, however, the Court cannot say that the error is harmless because it is not clear from the ALJ's decision that he considered any of the functional effects of Plaintiff's coronary artery disease at subsequent steps of the sequential evaluation. See Snyder v. Colvin, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 n. 12 (N.D.N.Y. July 8, 2014) ("Before a reviewing court can declare a Step 2 error harmless, it must discern something tangible on which to verify that functional effects or limitations of an impairment erroneously determined to be non-severe at Step 2 were, in fact, given consideration in subsequent steps.").

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision contains legal error and is unsupported by substantial evidence. Accordingly, Plaintiff's motion is

granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. On remand, the ALJ is directed to consider Plaintiff's coronary artery disease a severe impairment at step two, reweigh Dr. Krist's opinions according to the treating physician rule, obtain Dr. Visco's complete opinion and re-weigh it, reformulate the RFC, and consider obtaining a consultative physical examination of Plaintiff at the Commissioner's expense. The Commissioner's motion for judgment on the pleadings is denied. Clerk is directed to close this case.

ALL OF THE ABOVE IS SO ORDERED.

Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: March 14, 2019
Rochester, New York